UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANICE VIRTUE,<br><br>                             Plaintiff,<br><br>-against-<br><br>HB1 ALTERNATIVE HOLDINGS, LLC, et al.,<br><br>                            Defendants. | 25-CV-6345 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

This case stems from Plaintiff Janice Virtue's eviction. She had strained to stop her eviction: she fought foreclosure in state court; she filed multiple bankruptcy actions, automatically staying her eviction; and she even filed suit before this Court. But she was unsuccessful: on July 17, 2025, Westchester County law enforcement officials forced her from her home.

Now, she attempts to revisit and reverse the state court decisions that led to her eviction. She alleges multiple causes of action—from constitutional violations to state tort claims—against multiple defendants—from County law enforcement officers to the company that purchased her home to the law firms involved in, and the judge who presided over, her foreclosure proceedings—in an effort to reclaim her property. Those defendants now move to dismiss her claims.

For the reasons stated below, the Court grants their motions. Because Plaintiff seeks to overturn the state court's foreclosure decisions, the Court finds that it does not have subject matter jurisdiction over the majority of Plaintiff's claims. The Court also declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for conversion and intentional infliction of emotional distress.

**BACKGROUND**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also Lapa v. JP Morgan Chase Bank, N.A.*, No. 21-CV-4737 (NSR), 2023 WL 4706827, at *2 (S.D.N.Y. July 22, 2023) (explaining that a court may "consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit"). The following facts are, unless otherwise noted, taken from the Amended Complaint ("AC"), ECF No. 25, and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court also takes judicial notice of prior state court and bankruptcy court decisions relevant to this case. *See Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

This case arises out of Plaintiff's eviction. ¶ 1. For years, Plaintiff Janice Virtue ("Virtue" or "Plaintiff") lived with her mother at 87 Brookside Avenue in Mount Vernon, New York 10553 (the "Property"). ¶¶ 1, 7, 13. In early 2017, a non-defendant bank brought a lawsuit to foreclose on the Property. ECF Nos. 7-1, 7-2. Plaintiff and Plaintiff's mother, Janette Virtue, were among the named defendants. ECF No. 7-3. Then, in February 2020, Plaintiff's mother passed away intestate. ¶ 13. More than three years later, in an order dated September 8, 2023, and entered on September 21, 2023, Defendant the Honorable Charles D. Wood, Justice of the Supreme Court of the State of New York ("Justice Wood"), issued a judgment for the foreclosure and sale of the Property. ECF No. 22-2 (the "Foreclosure Judgment").

Pursuant to that Foreclosure Judgment, on November 14, 2023, a referee sold the Property at auction to Defendant HB1 Alternative Holdings, LLC ("HB1"). ECF No. 7-4. On or about December 22, 2023, the referee recorded a deed naming HB1 as the purchaser and vested title in HB1. ¶ 14, ECF No. 22-3 at 1. Early the following year, on February 7, 2024, HB1 moved for a writ of assistance to put HB1 into possession of the Property and to direct the Sheriff of Westchester County (the "County") to remove Plaintiff from the Property.[1] ECF No. 7-5. On March 22, 2024, Justice Wood issued the writ of assistance (the "Writ"). ¶ 15, ECF No. 22-3.

On June 14, 2024, the County issued a Notice of Eviction alerting Plaintiff to a scheduled eviction two weeks later, on June 28, 2024. ECF No. 1 at 29. Three days before the eviction was slated to take place, however, a duty judge issued a stay. ECF No. 7-7. Plaintiff had filed a last-minute affidavit with the court requesting "more time to pack up . . . and find another place to live." *Id.* at 3. "We have been fighting to keep our house," she wrote. *Id.* The court ordered HB1 to show cause at a hearing on July 12, 2024, as to why the eviction should not remain stayed. *Id.* at 2.

That same day, July 12, 2024, Plaintiff filed the first of three bankruptcy actions that she would file over the next nine months. *See* ECF No. 21 at 2 (citing *Virtue*, Nos. 24-BK-22612, 24-BK-22878, 25-BK-22309 (Bankr. S.D.N.Y.)); *see also* ECF Nos. 7-9, 7-10, 7-11. These cases automatically stayed the eviction further. *See In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014) ("The filing of a bankruptcy petition invokes the powerful protection of the automatic stay under 11 U.S.C. § 362."). On August 28, 2024, Justice Wood lifted the state court's temporary stay—finding that "the purchaser in the public auction sale is entitled to possession of the mortgaged premises." ECF No. 7-8 at 2. And on June 26, 2025, the bankruptcy court dismissed

---

[1] The motion was dated February 6, 2024, but was entered on February 7, 2024. ECF No. 7-5.

the last of Plaintiff's three cases, lifting the automatic stay. ECF No. 7-13 at 2 ("Bankruptcy Order") ("determin[ing] that the filing of the Debtor's bankruptcy petition was part of a scheme to delay, hinder, and defraud creditors that has involved multiple bankruptcy filings"); *see also* AC at 18.

Then, on July 17, 2025, Plaintiff was evicted from the Property. ¶¶ 1, 16, 38. During the eviction, multiple County law enforcement officers approached the Property "with visible weapons and a battering ram." ¶ 27. The officers threatened to break down the door. *Id.* Plaintiff had just left the bathroom, so she asked for a moment to get dressed. *Id.* In response, the officers kept yelling—demanding that Plaintiff immediately open the door. *Id.*

Plaintiff told the officers that "legal proceedings were still pending concerning the property," but one of the officers, Lieutenant Samuel Fagin ("Fagin"), replied: "We don't care about that." ¶ 28. "[I]t's going down no matter what you say," Fagin said. *Id.* "You're leaving with us." *Id.* The officers monitored Plaintiff closely as she tried to collect her belongings. ¶ 29. Another officer, Officer Christian Gutierrez ("Gutierrez"), ordered Plaintiff to "grab your medicine and important things so we can go." *Id.* Fagin warned that if Plaintiff returned to the Property, she would be arrested for trespassing. *Id.*

The officers removed Plaintiff and her family from the Property. ¶ 31. Her "possessions were ransacked, broken, and stolen." *Id.* In spite of all this, according to Plaintiff, the officers never produced an active warrant, writ, or judicial order to justify their actions. ¶ 28. The officers never showed Plaintiff a valid eviction order. *Id.* Lieutenant Fagin only pointed to a "missed bankruptcy adjournment as the basis for enforcement." *Id.* Ultimately, after being evicted from her home, Plaintiff was forced into a shelter. ¶ 31.

On August 1, 2025, Plaintiff commenced this action, proceeding pro se. ECF No. 1. She sued the County, Commissioner-Sheriff Terrance Raynor ("Raynor"), Lieutenant Fagin, and other law enforcement officers who executed the eviction—Officers Gutierrez, Mill Lau ("Officer Lau"), David Johnson ("Officer Johnson"), and Jesse Maracallo ("Officer Maracallo") (collectively, the "County Defendants"); Justice Wood, the judge who issued the Foreclosure Judgment and Writ; HB1, the company that purchased the Property; and LOGS Legal Group, LLP ("LOGS Legal") (formally known as Shapiro, DiCaro & Barak, LLC), and McCalla Raymer Leibert Pierce, LLP ("MRLP"), two law firms involved in the foreclosure and eviction proceedings. *See* ECF No. 1 ¶¶ 7–11. She also named as Defendants two companies allegedly involved in her eviction, National Field Representatives and All Ready Moving & Storage, as well as John Does 1–10, various locksmiths, movers, and participants in the eviction.[2] *See generally* ECF No. 1. On October 3, 2025, she filed an Amended Complaint naming the same Defendants. AC. The Court takes the Amended Complaint to be Plaintiff's operative complaint. *Id.*

In her Amended Complaint, Plaintiff alleges ten causes of action: (1) unlawful seizure in violation of the Fourth Amendment, ¶¶ 36–41; (2) denial of her procedural due process rights under the Fourteenth Amendment, ¶¶ 42–46; (3) violation of her substantive due process rights under the Fourteenth Amendment, ¶¶ 47–53; (4) an equal protection claim under the Fourteenth Amendment, ¶¶ 54–57; (5) pursuant to *Monell*, a claim that the County had a policy, practice, or custom of evicting individuals from their homes without due process, *see* ECF No. 8 ("County MTD") at 7; (6) a claim for declaratory relief and to quiet title pursuant to 28 U.S.C. § 2201 and

---

[2] Defendants National Field Representatives, All Ready Moving & Storage, and John Does 1–10 have not appeared.

New York Real Property and Procedure Law ("RPAPL") § 1501, ¶¶ 58–66; state law claims for (7) trespass, ¶¶ 67–70; (8) conversion, *id.*; and (9) intentional infliction of emotional distress ("IIED"), ¶¶ 71–74; and (10) a claim against the two law firm Defendants, LOGS Legal and MRLP, pursuant to 42 U.S.C. § 1983 ("Section 1983") for participating in an unlawful eviction in violation of Plaintiff's constitutional rights, ¶¶ 75–80. Other than the last claim, she appears to assert all other claims against all Defendants.

This is not Plaintiff's first federal case arising from the same set of facts. On February 10, 2025, while her second bankruptcy case was pending, Plaintiff commenced a different action before this Court. *See* Complaint, *Virtue v. Fed. Rsrv.*, No. 25-CV-1215 (JGLC) (S.D.N.Y. Feb. 10, 2025), ECF No 1. In that case, Plaintiff sought a temporary restraining order to stop the ongoing state court eviction action. Order, *Virtue*, No. 25-CV-1215 (JGLC) (S.D.N.Y. Apr. 14, 2025), ECF No. 30. However, citing the Anti-Injunction Act, 28 U.S.C. § 2283, and the *Younger* abstention doctrine, the Court explained that it was barred from enjoining an ongoing state court proceeding—including an ongoing foreclosure or eviction proceeding. *Id.*; Order, *Virtue*, No. 25-CV-1215 (JGLC) (S.D.N.Y. June 4, 2025), ECF No. 35. Accordingly, on June 5, 2025, slightly before the bankruptcy court dismissed the last of Plaintiff's three bankruptcy cases, *see* ECF No. 7-13, this Court dismissed Plaintiff's first federal case for lack of subject matter jurisdiction, Order, *Virtue*, No. 25-CV-1215 (JGLC) (S.D.N.Y. June 4, 2025), ECF No. 35.

Again, less than two months later—on August 1, 2025, after she had been evicted—Plaintiff then commenced this action. ECF No. 1. Three days after that, on August 4, 2025, Plaintiff filed a separate suit in state court. Notice of Removal, *Virtue v. HB1 Alt. Holdings, LLC*, No. 25-CV-6688 (JGLC) (S.D.N.Y. Aug. 13, 2025), ECF No 1. That case, filed in Westchester County Supreme Court, also challenged Plaintiff's eviction, and alleged the same claims against

the same defendants. *See id.* Nine days later, on August 13, 2025, the County Defendants removed that case to this District. *Id.* This Court then consolidated the removed case and the instant case, and closed the removed case. ECF No. 34.

Meanwhile, in this case, the appearing Defendants each moved to dismiss on multiple grounds. First, the County Defendants moved to dismiss, arguing that Plaintiff has failed to state any of her federal constitutional or state law claims against the County or its officers, and that Defendants Raynor, Fagin, Gutierrez, Lau, Johnson, and Maracallo (collectively, the "County Officer Defendants") are entitled to quasi-judicial absolute immunity. County MTD at 11–23. They also moved to consolidate this case with the removed state case, which the Court granted. ECF No. 34.

Next, MRLP moved to dismiss. ECF No. 10. It argues that Plaintiff failed to properly serve the law firm, and that the case must therefore be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.[3] ECF No. 11 ("MRLP MTD").

Then, LOGS Legal moved to dismiss. ECF No. 12. It argues that Plaintiff's case should be dismissed pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) because, *inter alia*, "Plaintiff has failed to set forth any valid causes of action" and "cannot use this court as an appeal of the State Court." ECF No. 13 ("LOGS Legal MTD") at 1.

Justice Wood then moved to dismiss. ECF No. 20. In addition to claiming sovereign and judicial immunity, he argues that the Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine, that Plaintiff fails to state a claim under Section 1983 "because she has failed to allege specific facts supporting her Constitutional claims," and

---

[3] Unless otherwise noted, all references to the "Federal Rules" or "Rules" are to the Federal Rules of Civil Procedure.

that res judicata bars Plaintiff's state law claims "because they arise from the state foreclosure judgment against her." ECF No. 21 ("Justice Wood MTD") at 1.

Finally, HB1 moved to dismiss. ECF No. 32. Similarly to other Defendants, it argues that it was improperly served, that the Court lacks subject matter jurisdiction under *Rooker-Feldman*, that Plaintiff failed to state a claim as to HB1, and that Plaintiff's state law claims are barred by res judicata. ECF No. 32-9 ("HB1 MTD").

Plaintiff opposed HB1's motion on February 20, 2026, ECF No. 37 ("Opp."), and HB1 replied on March 2, 2026, ECF No. 38 ("HB1 Reply").

For the reasons stated below, the Court finds that it lacks subject matter jurisdiction over the majority of Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. It thus dismisses with prejudice Plaintiff's claims for unlawful seizure, due process, and equal protection, her *Monell* liability claim, her claim for declaratory relief and to quiet title, her claim against the two law firm Defendants for participating in an unlawful eviction, and her trespass claim. The Court finds that Justice Wood is also immune in both his official and individual capacities. And the Court declines to exercise supplemental jurisdiction over Plaintiff's claims for conversion and IIED, dismissing those claims without prejudice to their refiling in state court. Therefore, the Court grants Defendants' motions to dismiss.

## LEGAL STANDARDS

The Court sets forth the legal standards under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim) because those are the standards applicable to the Court's analysis.

## I.    Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal citation omitted). Thus, in resolving a motion to dismiss for lack of subject matter jurisdiction, the court "must accept as true all material factual allegations in the complaint" but "may not draw any jurisdictional inferences in favor of the plaintiff." *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

"Where, as here, [a] defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Wise v. Combe Inc.*, 724 F. Supp. 3d 225, 232–33 (S.D.N.Y. 2024) (quoting *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019)).

## II.    Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). This is especially so in pro se cases, where "courts read pro se filings 'to raise the strongest arguments that they suggest.'" *Anderson Bey v. Roc Nation LLC*, No. 1:24-CV-02295 (ALC), 2025 WL 564248, at *1 (S.D.N.Y. Feb. 20, 2025) (quoting *Triestman v. Fed.*

9

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

The discussion proceeds as follows. First, the Court evaluates whether it has subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Because the Court finds that it does not have subject matter jurisdiction over the majority of Plaintiff's claims, it dismisses those claims outright. Next, the Court finds that Justice Wood is also immune in both his official and individual capacities. Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's final two claims, for conversion and IIED, and dismisses those claims without prejudice to their refiling in state court.

### I.    The Court Has No Subject Matter Jurisdiction Over the Majority of Plaintiff's Claims

"[S]ubject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power." *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990). Consistent with that proposition, Rule 12(h)(3) of the Federal Rules of Civil Procedure provides

10

that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The doctrine is named after two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which together "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). "The *Rooker-Feldman* doctrine, then, emerged as a response to complaints that 'invited federal courts of first instance to review and reverse unfavorable state-court judgments.'" *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Exxon Mobil Corp.*, 544 U.S. at 283).

*Rooker-Feldman* has four elements: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (cleaned up). "While all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar," the Second Circuit has stressed "that the second requirement — that the plaintiff complains of an injury *caused* by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Sung Cho*, 910 F.3d at 646 (cleaned up). This "causation requirement is only satisfied if 'the third party's

actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Hoblock*, 422 F.3d at 88).

The Second Circuit has also "applied the *Rooker-Feldman* doctrine with some frequency to cases involving suits directly against state-court judges, or in which error by state-court judges in state-court proceedings is asserted, frequently in the foreclosure process." *Sung Cho*, 910 F.3d at 645; *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (barring a claim under *Rooker-Feldman* because it would require "the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error"); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (same).

This is one such case. First, it "is well-settled that 'a property owner who loses his or her interest in the property through an in rem foreclosure proceeding in state court against the property has lost in state court for the purposes of *Rooker-Feldman*'s first requirement.'" *Lamour v. Musarra*, No. 24-CV-903 (JGLC), 2025 WL 485378, at *2 (S.D.N.Y. Feb. 13, 2025) (citing *Dorce v. City of New York*, 2 F.4th 82, 103 (2d Cir. 2021)).

This case also satisfies *Rooker-Feldman*'s third and fourth requirements. Plaintiff undeniably invites the Court to review and reject the Foreclosure Judgment and Writ that led to her eviction. She argues that she was "unlawfully evicted" by Defendants acting "without a valid writ, order, or warrant"; that the Property "was allegedly foreclosed upon in 2023"; that the "in rem jurisdiction purportedly relied on by Defendants was void ab initio"; and, ultimately, that Defendants "enabled the unconstitutional seizure of [her] home and property" without legal process. AC ¶¶ 1, 14, 20, 38, 40. She requests "emergency and permanent injunctive relief to restore her to possession" of the Property, "declaratory relief to invalidate the fraudulent deed

and expired writ" that transferred ownership of the Property and led to her eviction, and "damages for constitutional violations and trespass" on a Property she claims is still her own. *Id.* ¶ 3. And she filed this action on August 1, 2025, long after the Foreclosure Judgment was entered on September 21, 2023, or the Writ was issued on March 22, 2024, ECF Nos. 22-2, 22-3.

Finally, under the second element, Plaintiff complains of injuries that were caused or "produced by [the] state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Sung Cho*, 910 F.3d at 646 (quoting *Hoblock*, 422 F.3d at 88). The Foreclosure Judgment produced Plaintiff's eviction; without that Judgment, Plaintiff would have never been evicted. Her attempt to now "restore her[self] to possession" of the Property and "invalidate" the state court decisions transferring her property is thus precisely "the type of claim that *Rooker-Feldman* squarely forecloses, both because it addresses an injury caused by the state court judgment, and because it would require the district court to review [and reverse] that judgment." AC ¶ 3; *Dorce*, 2 F.4th at 104. Indeed, this case reflects *Rooker-Feldman*'s "paradigm situation": Plaintiff has "repaired to federal court to undo the [state] judgment." *Exxon Mobil*, 544 U.S. at 293.

Plaintiff's unlawful seizure claim, due process claims, equal protection claim, *Monell* liability claim, claim for declaratory relief and to quiet title, and claim against the two law firms are therefore barred by the *Rooker-Feldman* doctrine. These claims all stem from one underlying injury, produced by the state court's Foreclosure Judgment: the allegedly unlawful eviction. The same is true of Plaintiff's trespass claim. "Under New York law, trespass is the intentional invasion of another's property." *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007). For Plaintiff to claim that any of the Defendants intentionally invaded her property, she

13

would have had to own the Property at the time of the alleged trespass—during the eviction. In other words, she would need to reverse the Foreclosure Judgment to plead a trespass claim.

Because Plaintiff's "requested relief, if granted, would have the practical effect of reversing the foreclosure judgment of the state court," the Court dismisses these claims with prejudice for lack of subject matter jurisdiction. *Gomez v. Yisroel*, No. 21-CV-2172 (PAC), 2021 WL 2138462, at *3 (S.D.N.Y. May 26, 2021); *see id.* at *4 (collecting cases) ("In reaching this conclusion on the jurisdictional issue, the Court joins the overwhelming majority of Second Circuit decisions that have applied the *Rooker-Feldman* doctrine to dismiss federal cases inviting review of state court foreclosure and sale judgments.").

## II.     Justice Wood Is Also Immune In Both His Official and Individual Capacities

Plaintiff's claims against Defendant Justice Wood also fail because they are barred by sovereign and absolute judicial immunity. *See* AC at 5.

### A.  The Eleventh Amendment Shields Justice Wood in His Official Capacity

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (cleaned up). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

The limited *Ex Parte Young* exception allowing state judges to be sued in their official capacities when the "complaint alleges an ongoing violation of federal law and seeks relief

properly characterized as prospective" also does not apply. *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 247 (S.D.N.Y. 2020) (quoting *Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–56 (2011)); *see Ex parte Young*, 209 U.S. 123, 155–56 (1908). Plaintiff does not allege an ongoing violation of federal law or seek prospective relief— she simply alleges that the Foreclosure Judgment and Writ, and her subsequent eviction, were unlawful. *See* AC ¶¶ 45–46.

Insofar as Plaintiff asserts official-capacity claims under Section 1983 against Justice Wood, who is an employee of the New York State Unified Court System, the Eleventh Amendment bars such claims, and they are dismissed with prejudice.

**B. Absolute Judicial Immunity Bars Plaintiff's Individual-Capacity Claims**

The Court must also dismiss Plaintiff's Section 1983 claims against Justice Wood under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for damages in their individual capacities for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 9–12 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Here, Plaintiff only alleges claims against Justice Wood for actions he took within the scope of his judicial responsibilities—such as issuing the Foreclosure Judgment and Writ. *See* AC ¶ 25. To the extent Plaintiff asserts such individual-capacity claims under Section 1983 against Justice Wood, then, Justice Wood is absolutely immune, and those claims are dismissed with prejudice.

15

### III.    The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

Plaintiff's two remaining claims—for conversion and for IIED—are different in kind. These allegations turn, at least conceivably, on *how* the eviction was executed, not just on the fact that it occurred. The Court construes these claims to implicate only the County Defendants and the non-appearing Defendants (National Field Representatives, All Ready Moving & Storage, and John Does 1–10)—because those are the only actors who carried out the eviction.

Plaintiff alleges, for example, that Defendants "destroyed personal effects, antiques, and food, stole items of value, and irreparably damaged [her] private possessions," AC ¶ 69, and caused Plaintiff "severe emotional and physical harm, including trauma, migraines, and chronic distress," *id.* ¶ 73. Arguably, these claims are not barred by *Rooker-Feldman* because they allege violations in their own right—acts that were not caused by the Foreclosure Judgment and therefore do not require this Court to sit as an improper court of appeals evaluating the state court's Judgment.

However, the Court declines to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367. "When all federal claims are dismissed, district courts should generally decline to exercise supplemental jurisdiction over pendent state law claims." *Fisk v. Letterman*, 501 F. Supp. 2d 505, 528 (S.D.N.Y. 2007). In making this decision, "courts in this Circuit must weigh considerations of judicial economy, convenience, fairness, and comity." *Wilson v. Dantas*, No. 12-CV-3238 (GBD), 2013 WL 92999, at *9 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014) (internal citation and quotation marks omitted).

Here, declining to exercise supplemental jurisdiction over Plaintiff's "remaining common law claims at this early stage of the proceeding—far from trial and before substantial discovery has begun—does not create substantial unfairness or inconvenience to the parties." *Id.* The

16

pendent claims do not implicate any "clearly articulated federal interest." *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d. Cir. 2006). Additionally, "[c]omity and respect for New York state courts dictate that where possible, state courts should decide matters of state law, and that absent exceptional circumstances, this Court should decline to exercise supplemental jurisdiction over such claims." *Wilson*, 2013 WL 92999, at *9.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's conversion and IIED claims and dismisses them without prejudice to their refiling in state court.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are GRANTED. Plaintiff's unlawful seizure claim, due process claims, equal protection claim, *Monell* liability claim, claim for declaratory relief and to quiet title, claim against the two law firms for participating in an unlawful eviction, and trespass claim are all dismissed with prejudice pursuant to the *Rooker-Feldman* doctrine. Plaintiff's remaining claims, for conversion and IIED, are DISMISSED without prejudice to their refiling in state court.

The Clerk of Court is respectfully directed to terminate ECF Nos. 10, 12, 20, and 32, and to close the case.

Dated:  March 27, 2026
       White Plains, New York

SO ORDERED.

*Jessica Clarke*
_____
JESSICA G. L. CLARKE
United States District Judge

17